In the Matter of The New York and Western Union Tele-
graph Company, Appellant, *v.* Hugh J. Jewett, as Receiver,
Respondent.

Where, pending proceedings against the receiver of a railroad company,
to compel him to pay the claim of a creditor out of the assets in his
hands, the receiver was finally discharged and all of the property, by
direction of the court, taken out of his hands, *held,* that this was
sufficient ground for denying the application; that the court had power
to make the order discharging the receiver without notice to the petition-
ing creditor; and as upon his discharge he could no longer act for or
represent the company or its creditors, and as he no longer had any funds
out of which payment could be made, the court could not thereafter
make an order that he should pay a creditor.
Reported below, 43 Hun, 565.

(Argued April 25, 1889; decided June 25, 1889.)

Appeal from order of the General Term of the Supreme
Court in the first judicial department, made March 25, 1887,
which affirmed an order of Special Term denying an applica-
tion on the part of the petitioner herein, the nature of which,
as well as the material facts, are stated in the opinion.

*Ira D. Warren* for appellant. The receiver was not dis-
charged as to this claim so as to end this proceeding, the
defendant never having had notice of any application for the
receiver's discharge, although they were prosecuting their case
at that time.   (High on Receivers, § 848; *Woodruff* v. *Jewett,*
37 Hun, 205; *Miller* v. *Loeb,* 64 Barb. 454; *Whitney* v. *N.
Y. & A. R. R. Co.,* 32 Hun, 164; *People* v. *Nat. Trust Co.,*
82 N. Y. 283; *Moore* v. *Higgins,* 27 Daily Reg. 57; 20
Wkly. Dig. 124.)   This being an equity proceeding, this court
can grant us the relief to which we are entitled on the whole
proceeding.   (*Barton* v. *Barbour,* 104 U. S. 126; *Winfield*
v. *Bacon,* 24 Barb. 161; High on Receivers, § 254.)

*W. W. MacFarland* for respondent. The final disposition
of the action of the People and the action of the Farmers'
Loan and Trust Company for the foreclosure of its mortgage,

and of all the property involved in the litigation, and the complete discharge of the receiver appointed in those actions, necessarily terminated this proceeding and deprived the court of power to proceed further in the matter.    (*F. L. and T. Co.* v. *I. C. R. R. Co.*, 2 McCrary, 181.)    A petition or motion against a fund in possession of the court in a pending action by a stranger has no relation to the person of the receiver or to individual liability; nor, in the nature of things, can the mere pendency of such an application impose upon the receiver any obligation in favor of the stranger so applying. (*Wetmore* v. *Potter*, 92 N. Y. 82.)

Earl, J. In 1875 Hugh J. Jewett was appointed receiver of the Erie Railway Company, and he continued to be such receiver and to act as such until he was finally discharged on the 30th day of December, 1879.   On the 20th day of February, 1878, the president of the New York and Western Union Telegraph Company, the appellant here, made an affidavit showing that the Erie Railway Company and the receiver were indebted to the telegraph company for rent of a line of telegraph from the 1st day of April, 1865, to the 1st day of January, 1878, in the sum of $38,250; and upon that affidavit a motion was made at the Special Term of the Supreme Court for an order directing the receiver to pay out of the assets of the railroad company to the telegraph company the rents set forth in the affidavit, or, in default thereof, to surrender and deliver to the telegraph company the telegraph lines and property specified in the affidavit.

That motion was opposed upon an affidavit made by Jewett, in which he denied any indebtedness for the rent claimed, and controverted the other material allegations contained in the moving affidavit.    Thereupon the court made an order appointing a referee to take the proofs of the parties as to all the issues between them and report the same to the court together with his opinion thereon.

If the telegraph company has a meritorious claim, it has been exceedingly unfortunate in the prosecution thereof, for,

after a number of references and several hearings at the Special Term, and appeals to the General Term, it has been unable to procure a final adjudication that it has made a case for the payment to it of any sum whatever out of the assets of the Erie Railway Company in the hands of the receiver ; and it was in the end defeated at the General Term on the ground that the receiver had been finally discharged, and that all the property, under the direction of the court, had passed out of his hands.

In the actions commenced against the Erie Railway Company, the court had taken into its possession the property of the company to dispose of, manage and administer it for the benefit of all parties interested therein, or having any claims against the same ; and the receiver was merely its officer, arm or agent, to take possession of the property and manage and dispose of the same under its direction and subject to its control.   He could at any time be discharged by the court and another receiver appointed, or the property could be taken out of his hands and restored to its owner or otherwise disposed of under the judgment in the actions in which he was appointed. No creditor having a claim against the railroad company or its property could sue the receiver or obtain payment out of the property except by the consent of the court.  A creditor desiring payment out of the property in such a case is obliged to apply to the court, and for the purpose of having the claim adjudicated it may authorize a suit against the receiver, or it may hear the claim upon a summary application upon affidavits or oral evidence ; or, where the claim is disputed, it may order a reference ; and whether the proceeding be against the receiver by action or by a summary application, the purpose is to enable the court to determine whether the claim ought to be paid. Obviously, after the receiver has been discharged and the property, by the action of the court, has all been taken out of his hands, there can be no propriety whatever in any further proceedings against him, because thereafter he ceases to represent any one ; he can no longer act for or represent the company or its creditors, or any other person interested in the property ; and manifestly the court could not thereafter make an order that

he should pay a creditor, he no longer having any funds out of which payment could be made. (*Farmers' Loan and Trust Co.* v. *Cent. R. R. Co. of Iowa*, 2 McCrary, 181.) It would be a very singular proceeding to permit a creditor to litigate his claim with a person who was formerly receiver, but who has ceased to be such, and who is no longer the officer or agent of the court, or subject to its control.

But the claim is made on the part of the telegraph company that the receiver was discharged without any notice to it, and that it had no opportunity to be heard in the proceeding taken for his discharge. The discharge was granted on the 30th day of December, 1879, while this proceeding was pending. But the court had the power to discharge the receiver and take the property out of his hands, and distribute the same in pursuance of its judgment without any notice to the telegraph company. The jurisdiction of the court and the validity of its order did not depend upon any notice to the company. The general creditors of the Erie Railway Company were all represented in the actions, in which Jewett was appointed receiver, by the People and their debtor, and they were not, as matter of law or of right, entitled to any personal notice of any of the proceedings in those actions. (*Herring* v. *N. Y., L. E. & W. R. R. Co.*, 105 N. Y. 340, 376.)

It is possible that the claims of creditors in such a case as this may be prejudiced and, perhaps, defeated by the discharge of the receiver ; but such a result will rarely happen to vigilant creditors. In this case the receiver was appointed on the 26th day of May, 1875, in actions and proceedings so notorious that they must have come to the early knowledge of all the creditors within this state, and yet for nearly three years thereafter this claim was not made. The creditor must have known that these actions and proceedings were running to a termination, and that the time would come when the mortgages would be foreclosed, the property of the railroad company be disposed of and the receiver discharged. The sale, which must have been open and notorious, took place, and the receiver

was discharged after an accounting in public legal proceedings on the 30th of December, 1879. If the telegraph company did not have knowledge of such discharge prior thereto, the fact was brought to the notice of its counsel by the affidavit of Jewett, made early in 1882, in which he alleged his discharge as a defense to this proceeding; and thereafter, during all the subsequent litigation, such discharge was set up and relied upon as a defense. After such discharge the sole · remedy of the creditor was to apply to the court to vacate its order so that its rights as a creditor might be protected; and, during the whole time since, the litigation has proceeded without any effort on its part to get any relief whatever from the court vacating its order discharging the receiver. So long as that order stands, however unfortunate it may be to the creditor, it certainly cannot be entitled to the order which it seeks in this proceeding.

We are, therefore, of the opinion that the order of the General Term is right and should be affirmed, with costs.

All concur.

Order affirmed.